OPINION OF THE COURT
 

 Ciparick, J.
 

 In this case, the Court is called upon to adjudicate yet another facet of a continuing public controversy involving at its center the provision of educational services to the disabled children of the Village of Kiryas Joel in Orange County. Last time, the Court invalidated chapter 748 of the Laws of 1989, which carved out a separate school district for the Village. We held that chapter 748 violated the Establishment Clause of the United States Constitution, and the United States Supreme Court affirmed.
 

 The Legislature then enacted chapter 241 of the Laws of 1994 in an effort to establish a religion-neutral law of gen
 
 *64
 
 eral applicability authorizing any municipality meeting specified criteria to create its own school district. The Village of Kiryas Joel invoked the procedure established by chapter 241 and formed the school district at issue here. On this appeal, we hold that chapter 241 violates the Establishment Clause by effectively singling out the Village of Kiryas Joel for special treatment and thereby demonstrating impermissible governmental endorsement of this religious community.
 

 I.
 

 The pertinent history is recounted in this Court’s prior decisions and only the salient facts will be repeated here
 
 (see generally, Grumet v Board of Educ.,
 
 81 NY2d 518, 522-526;
 
 Board of Educ. v Wieder,
 
 72 NY2d 174, 178-182). The Village of Kiryas Joel, situated in the Town of Monroe, Orange County, is a religious enclave whose residents are all members of the Satinar Hasidic sect. The Village was formed by the Satmars pursuant to the religion-neutral and generally applicable terms of Village Law article 2, and its boundaries were drawn to include only property inhabited by the Satmars. While most of the Satinar children attend religious schools in the Village, these private schools do not have the resources needed to provide adequate educational services to the Satmars’ disabled children. For these children, the Satmars rely on the government-subsidized special education services to which all are legally entitled
 
 (see,
 
 20 USC § 1400
 
 et seq.;
 
 Education Law art 89).
 

 In response to two 1985 decisions by the United States Supreme Court holding that publicly funded classes on religious school premises violate the Establishment Clause
 
 (see, Aguilar v Felton,
 
 473 US 402;
 
 Grand Rapids School Dist. v Ball,
 
 473 US 373), the Monroe-Woodbury Central School District discontinued its practice of providing educational services to the Satmars’ disabled children in an annex at one of the Kiryas Joel religious schools. As a result, these children were required to attend secular schools outside the Village, but most of them eventually withdrew due to the difficulties they experienced in the unfamiliar surroundings. The Legislature responded by enacting chapter 748 of the Laws of 1989, which created a Kiryas Joel School District coterminous with the boundaries of the Village of Kiryas Joel. Although empowered to provide for the education of all school-aged children in the Village
 
 (see,
 
 Education Law § 3202), the school district operated only a special education program for disabled children.
 

 The same plaintiffs who instituted the present action challenged chapter 748 on Establishment Clause and State Consti
 
 *65
 
 tution grounds. This Court ruled that chapter 748 violated the Establishment Clause
 
 (see, Grumet v Board of Educ., supra,
 
 81 NY2d, at 528-529). Applying the second prong of the
 
 Lemon
 
 test, the Court held that chapter 748 manifested a "symbolic union of church and State” and thus had the impermissible primary effect of advancing religion
 
 (id.,
 
 at 529;
 
 see, Lemon v Kurtzman,
 
 403 US 602, 612).
 

 II.
 

 The United States Supreme Court granted defendants’ petition for a writ of certiorari and affirmed our ruling
 
 (see, Board of Educ. of Kiryas Joel Vil. School Dist. v Grumet,
 
 512 US 687
 
 [Kiryas Joel
 
 I]). A majority of the Court held that the Legislature, in creating a Kiryas Joel School District pursuant to chapter 748 of the Laws of 1989, had "single[d] out a particular religious sect for special treatment” in a "manner that fails to foreclose religious favoritism,” thereby contravening Establishment Clause neutrality principles (512 US, at 706, 710,
 
 supra).
 

 The Court reasoned that the Legislature had deviated from the requisite course of "governmental neutrality by extending the benefit of a special franchise” to the Village of Kiryas Joel, a self-identified religious enclave
 
 (id.,
 
 at 705). Specifically, the Court concluded that the "anomalously case-specific nature of the legislature’s exercise of state authority in creating this district for a religious community” failed to provide assurance that "the benefit received by the Satmar community is one that the legislature will provide equally to other religious (and nonreligious) groups”
 
 (id.,
 
 at 702, 703). Contrasting the constitutionally suspect creation of the Kiryas Joel School District with the process by which the Village itself had been formed pursuant to a religion-neutral State law of general applicability
 
 (see,
 
 Village Law § 2-202), the Court concluded: "Because the religious community of Kiryas Joel did not receive its new governmental authority simply as one of many communities eligible for equal treatment under a general law, we have no assurance that the next similarly situated group seeking a school district of its own will receive one”
 
 (id.,
 
 at 703 [footnote omitted]).
 

 In concurrence, Justice O’Connor reiterated that chapter 748 violated the Establishment Clause because it singled out the Village of Kiryas Joel for favorable treatment, and she provided a blueprint for a law that in her view might survive constitutional challenge:
 

 "There is nothing improper about a legislative
 
 *66
 
 intention to accommodate a religious group, so long as it is implemented through generally applicable legislation. New York may, for instance, allow all villages to operate their own school districts. If it does not want to act so broadly, it may set forth neutral criteria that a village must meet to have a school district of its own; these criteria can then be applied by a state agency, and the decision would then be reviewable by the judiciary. A district created under a generally applicable scheme would be acceptable even though it coincides with a village that was consciously created by its voters as an enclave for their religious group. I do not think the Court’s opinion holds the contrary”
 
 {id.,
 
 at 717 [O’Connor, J., concurring]).
 

 III.
 

 Four days after the Supreme Court issued its decision in
 
 Kiryas Joel I,
 
 the New York State Legislature passed chapters 241 and 279 of the Laws of 1994, which were signed into law one week later. Chapter 279 repeals chapter 748 of the Laws of 1989 and abolishes the Kiryas Joel School District. However, the law permits the school district to remain operational under the aegis of the Monroe-Woodbury Central School District until either a State court issues a mandate implementing the decision of the Supreme Court in
 
 Kiryas Joel I,
 
 or until the school district is merged with or replaced by another school district established pursuant to article 31 of the Education Law, whichever occurs first (L 1994, ch 279, §§ 2, 3).
 

 Chapter 241 amends article 31 of the Education Law by adding a new subdivision (3) to Education Law § 1504. The new subdivision provides a mechanism by which any municipality meeting certain qualifications may form its own school district without the need for legislative intervention,' and represents, according to defendants, the sort of generally applicable law alluded to by the Supreme Court majority and prescribed by Justice O’Connor in her concurrence in
 
 Kiryas Joel I.
 

 Pursuant to chapter 241, any municipality located wholly within a single central or union free school district but whose boundaries are not coterminous with the boundaries of the preexisting school district, may establish its own school district "whenever the educational interests of the community require it” (Education Law § 1504 [3], as added by L 1994, ch 241), provided that the following criteria are met:
 

 
 *67
 
 "(i) the enrollment of the municipality seeking to organize such new school district equals at least two thousand children, and is no greater than sixty percent of the enrollment of the existing school district from which such new school district will be organized; (ii) such new school district would have an actual valuation per total wealth pupil unit at least equal to the statewide average; (iii) the enrollment of the existing school district from which such new school district will be organized equals at least two thousand children, excluding the residents of such municipality; and (iv) the actual valuation per total wealth pupil unit of such existing school district will not increase or decrease by more than ten percent following the organization of the new school district by such municipality” (Education Law § 1504 [3] [a], as added by L 1994, ch 241).
 

 A "municipality” is limited for purposes of section 1504 (3) to "a city, town or village in existence as of the effective date of this subdivision” (Education Law § 1504 [3] [g], as added by L 1994, ch 241).
 

 The law also delineates the process by which the new school district may be formed
 
 (see,
 
 Education Law § 1504 [3] [b], as added by L 1994, ch 241), requiring a majority vote by the residents of the municipality seeking to create the new school district and by the trustees or members of the Board of Education of the existing school district. Unless the trustees or members of the Board of Education of the existing district approve the new district by a two-thirds majority, the new district must also be approved by a majority vote of the residents of the existing district, excluding the residents of the municipality seeking to organize the new district. In accordance with these procedural requirements, the Board of Education of the Monroe-Woodbury Central School District voted unanimously to approve the creation of a Kiryas Joel School District, and the residents of Kiryas Joel approved the creation of the new school district by a wide margin of 2,848 in favor and 341 against.
 

 Plaintiffs commenced this action as citizen taxpayers
 
 (see,
 
 State Finance Law § 123-a) seeking a declaration that chapter 241 violates the Establishment Clause of the United States Constitution and article XI, § 3 of the New York State Constitution. After Supreme Court denied plaintiffs’ request for a temporary restraining order
 
 (see, Grumet v Cuomo,
 
 162 Misc
 
 *68
 
 2d 913), both sides moved for summary judgment on the issue of the constitutionality of chapter 241. Supreme Court denied plaintiffs’ motion and granted defendants’ cross motion for summary judgment. The court declared chapter 241 constitutional under the test of
 
 Lemon v Kurtzman
 
 (403 US 602,
 
 supra)
 
 and dismissed plaintiffs’ complaint
 
 (see, Grumet v Cuomo,
 
 164 Misc 2d 644). The Appellate Division, with one Justice dissenting, reversed and granted summary judgment in plaintiffs’ favor declaring chapter 241 unconstitutional
 
 (see, Grumet v Cuomo,
 
 225 AD2d 4). The Court concluded that in enacting chapter 241, "the Legislature simply resurrected the prior law by achieving exactly the same result through carefully crafted indirect means”
 
 (id.,
 
 at 9). Defendants appealed to this Court as of right
 
 (see,
 
 CPLR 5601 [b] [1]), and we now affirm.
 

 IV.
 

 Under the command of the Establishment Clause of the First Amendment, "Congress shall make no law respecting an establishment of religion” (US Const 1st Amend). Although framed as a limitation on congressional power, the Establishment Clause has been long understood to curtail the power of State governments as well through the Fourteenth Amendment’s Due Process Clause
 
 (see, Cantwell v Connecticut,
 
 310 US 296, 303).
 

 The Supreme Court in
 
 Lemon v Kurtzman
 
 (403 US 602, supra) enunciated a tripartite test, embodying the "cumulative criteria” of its prior case law, to measure governmental action under the Establishment Clause: first, the action must have a secular purpose; second, it must not have a principal or primary effect that advances or inhibits religion; and third, it must not foster excessive governmental entanglement with religion
 
 (id.,
 
 at 612-613). Although several of the individual Supreme Court Justices have questioned the continuing utility of
 
 Lemon (see, Lamb’s Chapel v Center Moriches Union Free School Dist., 508 US 384, 398-399
 
 [Scalia, J., concurring] [collecting cases]), the case remains the law of the land and must guide our analysis
 
 (see, id.,
 
 at 395, n 7 ["there is a proper way to inter an established decision and
 
 Lemon
 
 * * * has not been overruled”]). Nevertheless, the Supreme Court has time and again instructed that the
 
 Lemon
 
 criteria are not fixed rules to be inexorably and rigidly applied. Rather, they constitute "guidelines”
 
 (Meek v Pittenger,
 
 421 US 349, 359) or "helpful signposts”
 
 (Hunt v McNair,
 
 413 US 734, 741) to mark the way in this labyrinthine realm of the law. Indeed, the Supreme
 
 *69
 
 Court in
 
 Kiryas Joel I
 
 did not explicitly rely on any of the
 
 Lemon
 
 criteria, although Justice Blackmun recognized in concurrence that the Court’s neutrality holding evoked the "primary effect” test of
 
 Lemon’s
 
 second prong
 
 (see, Kiryas Joel I, supra,
 
 512 US, at 710 [Blackmun, J., concurring];
 
 see also, Capitol Sq. Review & Advisory Bd. v Pinette,
 
 515 US 753, 763 [plurality opn] [describing
 
 Kiryas Joel I
 
 as resting on an "endorsement” theory]).
 

 We conclude in this case that chapter 241 violates the Establishment Clause neutrality principles that form the core holding of
 
 Kiryas Joel I
 
 and, for essentially the same reasons, likewise transgresses
 
 Lemon’s
 
 second prong. Notwithstanding its purported facial neutrality, we interpret chapter 241 as having the nonneutral effect of allowing the religious community of Kiryas Joel, but no other group at this time and probably ever, to create its own school district. Chapter 241’s conferral of its special benefit on the Village of Kiryas Joel alone, as against virtually all other groups be they religious or nonreligious, effectively conveys a message of impermissible governmental endorsement of the Satmar community of Kiryas Joel.
 

 A.
 

 One of the first principles of Establishment Clause jurisprudence is that government must "maintain a course of neutrality among religions, and between religion and nonreligion”
 
 (Grand Rapids School Dist. v Ball,
 
 473 US 373, 382
 
 supra; see, Matter of Griffin v Coughlin,
 
 88 NY2d 674, 689-691,
 
 cert denied
 
 — US —, 117 S Ct 681). At its core, the Establishment Clause precludes government from "pass[ing] laws which aid one religion, aid all religions, or prefer one religion over another”
 
 (Everson v Board of Educ.,
 
 330 US 1, 15). Equally well established is the principle that statutes of general applicability that extend their benefits without regard to religion honor the neutrality requirement and are generally beyond Establishment Clause reproach. The Supreme Court has explained that "a significant factor in upholding governmental programs in the face of Establishment Clause attack is their neutrality towards religion”
 
 (Rosenberger v Rector & Visitors of Univ. of Va.,
 
 515 US 819, 839). Likewise, the Court has "frequently relied explicitly on the general availability of any benefit provided religious groups or individuals in turning aside Establishment Clause challenges”
 
 (Kiryas Joel I, supra,
 
 512 US, at 704 [citing
 
 Walz v Tax Commn.,
 
 397 US 664, 673;
 
 *70
 

 Bowen v Kendrick,
 
 487 US 589, 608];
 
 see also, Zobrest v Catalina Foothills School Dist.,
 
 509 US 1, 8).
 

 In reviewing a law to determine whether it is truly religion-neutral and generally applicable, however, "[fjacial neutrality is not determinative. The Free Exercise Clause,
 
 like the Establishment Clause,
 
 extends beyond facial discrimination”
 
 (Church of Lukumi Babalu Aye v Hialeah,
 
 508 US 520, 534 [emphasis added] [citing
 
 Gillette v United States,
 
 401 US 437, 452 ("the Establishment Clause forbids subtle departures from neutrality”)]). Consequently, "[o]fficial action that targets religious conduct for distinctive treatment,” whether that treatment is adverse or favorable, "cannot be shielded by mere compliance with the requirement of facial neutrality”
 
 (id.,
 
 at 534). Moreover, just as "[t]he provision of benefits to [a] broad * * * spectrum of groups is an important index of secular effect”
 
 (Widmar v Vincent,
 
 454 US 263, 274;
 
 see also, Westside Community Bd. of Educ. v Mergens,
 
 496 US 226, 248 [plurality opn] [same]), the corollary of this proposition is also true: The provision of a governmental benefit to a restricted class, when that class is formed along religious lines, is a telling index of nonneutral sectarian effect
 
 (see, Rosenberger v Rector & Visitors of Univ. of Va., supra,
 
 515 US, at 846 [O’Connor, J., concurring] ["Neutrality,
 
 in both form and effect,
 
 is one hallmark of the Establishment Clause”] [emphasis added];
 
 Walz v Tax Commn., supra,
 
 397 US, at 696 [Harlan, J., concurring] ["The Court must survey meticulously the circumstances of governmental categories to eliminate * * * religious gerrymanders]). Consistent with these principles, the Supreme Court in
 
 Kiryas Joel I
 
 ruled that chapter 748 violated the neutrality principle by solely benefiting a religious group, even though the law employed facially religion-neutral terms to create a school district coterminous with the duly incorporated Village of Kiryas Joel (512 US, at 702-705,
 
 supra).
 

 Plaintiffs acknowledge that chapter 241, like chapter 748, appears neutral and generally applicable on its face. They argue, however, that the statute in its inescapable operation exclusively benefits the religious community of Kiryas Joel and, therefore, violates the Constitution’s guarantee of government neutrality in matters involving religion
 
 (see, Capitol Sq. Review & Advisory Bd. v Pinette, supra,
 
 515 US, at 777 [O’Connor, J., concurring] ["the Establishment Clause forbids a State from hiding behind the application of formally neutral criteria and remaining studiously oblivious to the effects of its actions”]). Given the unrebutted record evidence in this case,
 
 *71
 
 we agree. On their motion for summary judgment, plaintiffs submitted affidavits from two experts demonstrating that Kiryas Joel is the lone municipality, out of 1,546 municipalities State-wide, currently eligible to create its own school district pursuant to the provisions of chapter 241. In opposition, defendants’ expert challenged, as methodologically flawed, the use by plaintiffs’ experts of 1990 census figures. However, plaintiffs’ experts presented uncontroverted proof that the 1990 census data is the only available source of school enrollment figures by municipality on a State-wide basis; moreover, plaintiffs’ experts also evaluated the statutory criteria using the 7% adjustment figure submitted by defendants’ expert and reached the same conclusion that Kiryas Joel is the only municipality currently eligible under chapter 241. Defendants offered no evidence to demonstrate that any other municipality is eligible at this time and have therefore failed to raise a triable issue of fact concerning whether any other municipality currently qualifies under the terms of chapter 241.
 

 Aside from challenging the methodology employed by plaintiffs’ experts, defendants essentially concede that Kiryas Joel is the only presently eligible municipality, but contend that other municipalities may qualify in the future. This theoretical possibility, defendants assert, conclusively establishes the statute’s neutrality and general applicability
 
 (see, Hotel Dorset Co. v Trust for Cultural Resources,
 
 46 NY2d 358, 373 [statute applying to class of one constituted a "general” not a "special” law for Home Rule purposes where others might become eligible];
 
 see also, Matter of McAneny v Board of Estimate & Apportionment,
 
 232 NY 377, 392-393 [same]). Defendants argue that so long as the statutory criteria are supported by legitimate educational purposes, it is mere happenstance, as well as constitutionally irrelevant, that Kiryas Joel is currently the only eligible municipality.
 

 The stated purpose for enacting chapter 241 was to fill the void in Education Law § 1504, pursuant to which only district superintendents were previously empowered to create new school districts. As explained in the Governor’s Program Bill Memorandum, "even though there are many circumstances in which an existing political subdivision of the State may wish to form its own school district, there is no formal mechanism by which the governing body of a municipality can initiate the process toward the creation of a separate school district”
 
 (see,
 
 Governor’s Program Bill Mem, at 3, Bill Jacket, L 1994, ch 241). Chapter 241 purports to create such a mechanism.
 

 
 *72
 
 A review of the statutory criteria shows some of them to be related to legitimate educational concerns. For example, the requirement that the existing school district and the new school district both comprise at least 2,000 students will reasonably ensure "a sufficient student base” for both districts to sustain their operations
 
 (id.).
 
 Similarly, the qualification that a municipality cannot form its own district if its secession will reduce the population of the preexisting district by more than 60% would seem a legitimate means of protecting the preexisting district by "limit[ing] the percentage of the [preexisting district’s] territory that could be lost if a municipality creates its own school district”
 
 (id.).
 

 Chapter 241’s fiscal criteria, for the most part, also serve identifiable purposes. Requiring that the new district possess an actual valuation per total wealth pupil unit at least equal to the State-wide average (calculated roughly by dividing the district’s total property value by the number of students) "ensure[s] that a sufficient property base exists to support school district operations”
 
 (id.).
 
 Moreover, the proviso that the creation of the new school district not reduce the per pupil wealth of the preexisting district by more than 10% is an appropriate way to protect a preexisting district from the potentially impoverishing effect of a wealthy municipality’s secession.
 

 However, the statute contains two qualifications that cannot be so readily explained, though both further restrict the class of eligible municipalities. First, the statute provides that the creation of a new district cannot cause the per pupil wealth of the preexisting district to
 
 increase
 
 by more than 10%, though there assuredly would be no sound reason to protect a district from a wealth increase. Defendants assert that this condition guarantees, by its obverse, that the new district will not experience an adverse swing in property taxes. However, the stated purpose would appear amply served by the independent condition that the new district’s per pupil wealth must equal or exceed the State average. Additionally, the statute requires the voters of the seceding municipality to approve the new school district, which they are free to reject if it will result in higher taxes.
 

 Most problematic is the statutory definition limiting a "municipality” to "a city, town or village
 
 in existence as of the effective date of this
 
 subdivision” (Education Law § 1504 [3] [g], added by L 1994, ch 241 [emphasis added]). The effect of this seemingly benign provision, tacked on to the statute in its
 
 *73
 
 definitional section, is to cut off any group, religious or nonreligious, subsequently incorporated as a municipality from utilizing the procedure established by chapter 241. The legislative history contains no explanation for this statutory cut-off, and defendants’ submissions omit any mention of it, but its limiting effect is manifest. Since no existing municipalities aside from Kiryas Joel now meet the statutory criteria, the only possibility that any other municipality will become eligible is if one were prospectively to experience a population or wealth shift sufficient to satisfy the eligibility criteria. However, any group that lacked the foresight to incorporate as a village before the enactment of the statute will be barred from creating its own school district. No other group can hereafter do what Kiryas Joel did.
 

 It is apparent from the foregoing that the qualifying criteria and the definitional cut-off, though perhaps well intentioned and not entirely devoid of secular justification, are drawn in such a way that "the benefit flows only to a single sect”
 
 (Kiryas Joel I, supra,
 
 512 US, at 705). Out of more than 1,500 municipalities in the State of New York, Kiryas Joel is the only one now able to benefit from the law’s provisions and is likely to be the only one ever to qualify. In its actual effect, then, chapter 241 operates not as a generally applicable, religion-neutral law, but has the same nonneutral effect of singling out Kiryas Joel for special treatment that caused this Court and the Supreme Court to strike down chapter 748 of the Laws of 1989 in
 
 Kiryas Joel I:
 
 "[T]he religious community of Kiryas Joel did not receive its new governmental authority simply as one of many communities eligible for equal treatment under a [truly] general law”
 
 (id.,
 
 at 703).
 

 Moreover, we cannot agree with defendants that the neutrality problem flowing from chapter 241 is eliminated by the statutory provision requiring approval of the new district both by the municipality seeking to create its own district and by the preexisting district
 
 (see,
 
 Education Law § 1504 [3] [b], as added by L 1994, ch 241). Only Kiryas Joel presently qualifies to submit the new district proposal for voter approval, and it is this virtually exclusive preference, not the procedure set up under the statute after a municipality qualifies, that fails the test of neutrality.
 

 B.
 

 Because chapter 241 effectively singles out the Village of Kiryas Joel for special treatment, we also conclude that it
 
 *74
 
 violates the second, prong of the
 
 Lemon
 
 test. Under this prong, State action is invalid if its "primary effect” is to advance or promote religion
 
 (Lemon v Kurtzman,
 
 403 US 602, 612,
 
 supra).
 
 Moreover, a violation "is established if the State action’s 'inevitable effect [is] to aid and advance’ religion,” regardless of its purpose and whether or not it also has substantial secular effects
 
 (Matter of Griffin v Coughlin,
 
 88 NY2d 674, 691,
 
 supra
 
 [quoting
 
 Committee for Pub. Educ. v Nyquist,
 
 413 US 756, 793]).
 

 The Supreme Court has clarified that the central question to be answered under
 
 Lemon’s
 
 second prong is whether "the challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices”
 
 (Grand Rapids School Dist. v Ball,
 
 473 US 373, 390,
 
 supra).
 
 This concept of "endorsement” is alternatively expressed as "favoritism,” "promotion,” or "preference” (s
 
 ee, Allegheny County v Greater Pittsburgh Am. Civ. Liberties Union,
 
 492 US 573, 593 [citing cases]), but the principle is constant: "Whatever else the Establishment Clause may mean * * *, it certainly means at the very least that government may not demonstrate a preference for one particular sect or creed”
 
 (id.,
 
 at 605).
 

 Two aspects of the endorsement inquiry are particularly relevant in this case. First, as is evident from the very terms of
 
 Lemon’s
 
 second prong, the actual effect of the challenged State action, and not merely its stated purpose, is a proper subject of Establishment Clause scrutiny
 
 (see, id.,
 
 at 592 ["we have paid particularly close attention to whether the challenged governmental practice either has the purpose
 
 or effect
 
 of 'endorsing’ religion”] [emphasis added]). "[E]ven when the challenged statute appears to be neutral on its face,” the Supreme Court has "always been careful to ensure that” the challenged State action "does not have the primary effect of advancing religion”
 
 (Bowen v Kendrick,
 
 487 US 589, 609,
 
 supra; see, Grand Rapids School Dist. v Ball, supra,
 
 473 US, at 389-392 [invalidating State-funded educational program because of its "endorsement” effect, where 40 of the 41 beneficiaries were religious schools];
 
 cf., Texas Monthly v Bullock,
 
 489 US 1, 17 [plurality opn] [invalidating tax exemption limited to religious periodicals because it "effectively endorses religious belief’]).
 
 *
 

 In addition, the endorsement inquiry is not conducted by analyzing the challenged governmental action in isolation.
 
 *75
 
 Rather, a court must take into account the context in which the State has acted. "Context determines whether particular governmental action is likely to be perceived as an endorsement of religion”
 
 (New York State School Bds. Assn. v Sobol,
 
 79 NY2d 333, 339,
 
 cert denied
 
 506 US 909;
 
 Grumet v Board of Educ.,
 
 81 NY2d 518, 528,
 
 affd
 
 512 US 687, supra;
 
 see, Allegheny County v Greater Pittsburgh Am. Civ. Liberties Union, supra,
 
 492 US, at 598-601 [analyzing physical and temporal context of creche display];
 
 Lynch v Donnelly,
 
 465 US 668, 679 ["the focus of our inquiry must be on the creche in the context of the Christmas season”];
 
 cf., Kiryas Joel I, supra,
 
 512 US, at 699 [plurality opn] ["analysis does not end with the text of the statute at issue,” but must take into account its "context”]).
 

 Applying the foregoing principles to this case, we conclude that the enactment of chapter 241 would be perceived as an act of governmental favor for the sole benefit of the Satmar sect. Chapter 241 was enacted into law after the Supreme Court issued its decision in
 
 Kiryas Joel I
 
 striking down chapter 748 as an act of legislative favoritism. Defendants acknowledge that chapter 241 was adopted in direct response to the
 
 Kiryas Joel I
 
 ruling to provide the Village of Kiryas Joel with an alternative mechanism to secure its own school district. Indeed, chapter 279, a companion statute to chapter 241, expressly authorizes the district’s continued operation and specifically contemplates that a Kiryas Joel School District will be reconstituted pursuant to Education Law article 31.
 

 Of course, the Legislature was perfectly within its authority in attempting to cure the constitutional infirmity of a prior law. According to the Supreme Court’s decision in
 
 Kiryas Joel I,
 
 moreover, the Legislature might have achieved a constitutionally acceptable result had it enacted a truly religion-neutral law of general applicability that the Village of Kiryas Joel, as one in a broad array of eligible municipalities, might have invoked. Instead, as demonstrated above, the Legislature’s attempt to remedy chapter 748 through the enactment of chapter 241 produced a law whose actual effect confers a benefit, on the religious community of Kiryas Joel alone and for all practical purposes effectively replicates the prior unconstitutional law. Viewed in the context of its history and effect, we
 
 *76
 
 conclude that the enactment of chapter 241 bestows an unmistakable "imprimatur of state approval” on the Satmar sect
 
 (Widmar v Vincent,
 
 454 US 263, 274,
 
 supra).
 

 Defendants’ final argument that chapter 241 should be upheld as a permissible free exercise accommodation of the Sat-mars’ religious needs is unavailing. Not only is this contention inconsistent with the alternative claim that chapter 241 is a religion-neutral law of general applicability, it is expressly foreclosed by the Supreme Court’s holding in
 
 Kiryas Joel I (see,
 
 512 US, at 705-707,
 
 supra).
 

 In light of our holding, we do not reach plaintiffs’ alternative argument that chapter 241 of the Laws of 1994 violates article XI, § 3 of our State Constitution.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Wesley concur.
 

 Order affirmed, with costs.
 

 *
 

 A statute that on its face grants a denominational preference is subject to strict scrutiny
 
 (see, Larson v Valente,
 
 456 US 228, 246). In light of our
 
 *75
 
 holding in this case, we do not consider whether the strict scrutiny standard might also apply when a statute, though framed in neutral terms, accomplishes a denominational preference nonetheless
 
 (compare, Corporation of Presiding Bishop v Amos,
 
 483 US 327, 338-339,
 
 with Grumet v Board of Educ.,
 
 81 NY2d 518, 532 [Kaye, J., concurring]).