OPINION OF THE COURT
Smith, J.
At issue on this appeal is whether chapter 390 of the Laws of 1997, which enables Kiryas Joel to create a separate school district for its disabled children, violates the Establishment Clause of the First Amendment of the United States Con *683 stitution. We conclude that the legislation has the impermissible effect of advancing one religious sect and that it is unconstitutional.
I.
The long history underlying this action is fully chronicled in previous opinions by the Supreme Court of the United States and this Court (see, Board of Educ. of Kiryas Joel Vil. School Dist. v Grumet, 512 US 687; Grumet v Cuomo, 90 NY2d 57; Grumet v Board of Educ. of Kiryas Joel Vil. School Dist., 81 NY2d 518, affd 512 US 687; Board of Educ. of MonroeWoodbury Cent. School Dist. v Wieder, 72 NY2d 174). Kiryas Joel is a village comprised of Satmar Hasidic Jews residing in Orange County, New York. Residents of Kiryas Joel are devoutly religious and, among other things, follow a strict interpretation of the Torah, segregate the sexes outside the home and dress in a distinctive manner. The children of the Village are educated in parochial schools — boys at the United Talmudic Academy, where they are taught the Torah and girls at Bais Rochel, where they are instructed and prepared for their roles as wives and mothers. Neither school, however, provides special educational services to handicapped children who, under State and Federal law, are entitled to such services even when enrolled in private schools (Individuals with Disabilities Education Act, 20 USC § 1400 et seq.).
Prior to 1985, the handicapped children of Kiryas Joel, located within the Monroe-Woodbury Central School District, received special educational services provided by MonroeWoodbury in a building annexed to Bais Rochel. In 1985, following the decision of the Supreme Court in Aguilar v Felton (473 US 402) and School Dist. of City of Grand Rapids v Ball (473 US 373) — which ruled that publicly funded classes on religious school premises violated the Establishment Clause— Monroe-Woodbury ceased offering on-site schooling to Kiryas Joel’s handicapped children. That decision, now overruled by the Supreme Court, triggered the years of litigation preceding this appeal.
After several months of sending their handicapped children to public schools to receive the special education services, the parents of Kiryas Joel refused to continue the arrangement, alleging that the children experienced fear and trauma in leaving their community and interacting with people whose ways were so different from theirs (Board of Educ. of MonroeWoodbury Cent. School Dist. v Wieder, 72 NY2d 174, 181, *684 supra). Many sought administrative review of MonroeWoodbury’s decision to offer the special education services only in public schools. Monroe-Woodbury commenced a declaratory judgment action, seeking a declaration that Education Law § 3602-c compelled it to furnish special education services only in regular classes and programs of the public schools, and not elsewhere. This Court ruled that the law neither compelled Monroe-Woodbury to provide special education to Kiryas Joel’s handicapped children in public schools, nor required it to do so in a segregated setting, as was urged by Kiryas Joel (id., at 188). Instead, this Court ruled that Monroe-Woodbury provide the special services at a site reasonably accessible to Kiryas Joel’s handicapped children (id., at 184).
A. KIRYAS JOEL I
In an effort to resolve the longstanding controversy between Kiryas Joel and Monroe-Woodbury, the Legislature enacted chapter 748 of the Laws of 1989,[1] which established a union free school district coterminous with Kiryas Joel within the boundaries of Monroe-Woodbury. In Grumet u Board of Educ. of Kiryas Joel Vil. School Dist. (81 NY2d 518, supra), this Court held that chapter 748 contravened the Establishment Clause of the First Amendment of the Federal Constitution because it violated the second prong of the three-part test delineated in Lemon v Kurtzman (403 US 602). The Court reasoned that because the newly formed school district was coterminous with Kiryas Joel, only Hasidic children would attend the public school, and only members of the Hasidic sect would likely serve on the school board. The Court concluded that the statute therefore constituted a “symbolic union of church and State effected by the establishment of the Kiryas Joel Village School District * * * [and was] likely to be perceived by the Satmarer *685 Hasidim as an endorsement of their religious choices, or by nonadherents as a disapproval of their individual religious choices” (Grumet v Board of Educ., 81 NY2d, supra, at 529).
The Supreme Court affirmed this Court’s holding in Board of Educ. of Kiryas Joel Vil. School Dist. v Grumet (512 US 687, supra [Kiryas Joel I]). In a 6 to 3 decision, the Supreme Court ruled that chapter 748 violated the prohibition against government establishment of religion because the act was “tantamount to an allocation of political power on a religious criterion and neither presupposes nor requires governmental impartiality toward religion” (512 US, at 690). The Court stated that the statute departed from a constitutional requirement of neutrality toward religion “by delegating the State’s discretionary authority over public schools to a group defined by its character as a religious community, in a legal and historical context that gives no assurance that governmental power has been or will be exercised neutrally” (id., at 696; see also, id., at 703). The legislative act, in the words of the Supreme Court, left “the Court without any direct way to review such state action for the purpose of safeguarding a principle at the heart of the Establishment Clause, that government should not prefer one religion to another, or religion to irreligión” (id., at 703).
B. KIRYAS JOEL II
Four days after the Supreme Court’s decision in Kiryas Joel I, the Legislature responded by passing chapter 241 of the Laws of 1994. Under the new statute, a municipality located wholly within a single central or union free school district but whose boundaries were not coterminous with the boundaries of any preexisting school district could establish its own school district whenever the educational interests of the community required it (Grumet v Cuomo, 90 NY2d 57, supra [Kiryas Joel II], citing Education Law § 1504 [former (3)] [a]).[2] The statute set forth facially neutral criteria that a municipality could satisfy in order to establish a school district and delineated the *686 process by which the new school district could be formed. The statute further defined the term “municipality” as “a city, town or village in existence as of the effective date of this subdivision” (Education Law § 1504 [former (3)] [g]).
This Court held chapter 241 of the Laws of 1994 unconstitutional for two reasons (Grumet v Cuomo, supra). First, this Court determined that although the statute was facially neutral, it had a nonneutral effect of allowing Kiryas Joel to create its own school district without providing the same opportunity to other groups. Specifically, the Court reasoned that by limiting its applicability to municipalities “in existence as of the effective date of’ the statute, any group, religious or nonreligious, subsequently incorporated as a municipality was effectively cut off from utilizing chapter 241’s procedures (id., at 72). The definitional limitation manifested itself in such a way that only one sect reaped the benefits of the statute— Kiryas Joel. The Court noted that the Legislature might have achieved a constitutionally acceptable result if it had enacted a law of “general applicability that the Village of Kiryas Joel, as one in a broad array of eligible municipalities, might have invoked” (id., at 75 [emphasis added]).
Second, the Court determined that chapter 241, like its predecessor, failed the second prong of the Lemon test (id., at 68). The Court stated that, inasmuch as Kiryas Joel was the only municipality eligible to benefit from the statute, “the enactment of chapter 241 would be perceived as an act of governmental favor for the sole benefit of the Satmar sect” (id., at 75).
C. THE STATUTE UNDER REVIEW
Three months after the Court’s determination in Kiryas Joel II that chapter 241 was unconstitutional, the Legislature enacted a third statute — chapter 390 of the Laws of 1997, or “The Kiryas Joel School Bill” — which is before us on this appeal (Education Law § 1504.[3], added by L 1997, ch 390). Education Law § 1504 (3)[3] delineates criteria which a municipality, “situated wholly within one central or union free school district but whose boundaries are not coterminous with the *687 boundaries of such school district,” may follow in order to establish its own school district. The statute prescribes that (i) the new school district equal at least 2,000 children and that it be no greater than 60% of the enrollment of the existing school district from which the school district will be organized, (ii) the newly formed district have an actual valuation per total wealth pupil unit at least equal to the State-wide average, and (iii) the enrollment of the existing school district from which the new district is formed equal at least 2,000 children, excluding the residents of the municipality (Education Law § 1504 [3] [a], as added by L 1997, ch 390).
Plaintiffs Louis Grumet and Caroline Shipley, citizen taxpayers,[4] commenced the present action against the Governor and various departments and officials, the Board of Education of the Kiryas Joel Union Free School and Monroe-Woodbury, challenging the constitutionality of chapter 390 under both the Federal and State Constitutions. The court concluded that chapter 390 definitively applies to only two municipalities— Kiryas Joel and one other — and that the law represented unequivocal but impermissible favoritism by the State to the Satinar community. The court granted plaintiffs’ motion for summary judgment and permanently enjoined defendants “from taking any and all present, future action or expending any State monies or resources for the purpose of implementing Chapter 390 of the Laws of 1997.”
The Appellate Division unanimously affirmed, agreeing that the record supports the conclusion that the new statute applies to only two of the State’s 1,545 municipalities and concluding that chapter 390 is not a “ ‘truly religious-neutral law of general applicability * * * [available to] a broad array of eligible municipalities’” (Grumet v Pataki, 244 AD2d 31, 36, quoting *688 Grumet v Cuomo, 90 NY2d, supra, at 75). The Appellate Division further concluded that chapter 390 failed the second prong of the Lemon test because it “clearly provides an impermissible preference to the Village in response to the Satmars’ desire to provide their handicapped children with special education services in an exclusive Satmar environment” in light of the statute’s legislative history and context (244 AD2d, at 36-37).
Finally, the Appellate Division noted that the Supreme Court’s decision in Agostini v Felton (521 US 203) overruled the Court’s prior decision in Aguilar v Felton (473 US 402, supra). Thus, Monroe-Woodbury was no longer precluded from offering Kiryas Joel’s children special educational services at the Hasidic school. Accordingly, the Court stated that “the fact that the underlying reason for the creation of the challenged school districts has now been eliminated also supports plaintiffs’ assertion that chapter 390 should be perceived as yet another improper endorsement by the Legislature in providing the Satmar community the continued existence of a publicly funded exclusive environment in which to educate their children in accordance with their religious preferences” (244 AD2d, at 37).
Defendants appealed as of right, and we now affirm the order of the Appellate Division.[5]
II.
The Establishment Clause of the First Amendment of the Federal Constitution, made applicable to the States through the Fourteenth Amendment, prescribes that “Congress shall make no law respecting an establishment of religion” (US Const 1st Amend). The Establishment Clause ensures that neither the State nor the Federal government “can pass laws which aid one religion, aid all religions, or prefer one religion over another” (Everson v Board of Educ., 330 US 1, 15). The clause requires that States be “neutral in [their] relations with groups of religious believers and non-believers” (id., at 18). Applying these fundamental neutrality principles, this Court has stated that “statutes of general applicability that extend their benefits without regard to religion honor the neutrality requirement and are generally beyond Establishment Clause reproach” (Grumet v Cuomo, 90 NY2d, supra, at 69). On the other hand, *689 the Establishment Clause is violated when a sectarian school enlists “the machinery of the State to enforce a religious orthodoxy” (Lee v Weisman, 505 US 577, 592).[6]
Significantly, the facial neutrality of a law is not dispositive (Grumet v Cuomo, 90 NY2d, supra, at 70, citing Church of Lukumi Babalu Aye v City of Hialeah, 508 US 520, 534 [“The Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination”]). In determining whether a statute comports with fundamental Establishment Clause principles, and is “truly religion-neutral and generally applicable,” a court must scrutinize the law both in form and effect (Grumet v Cuomo, 90 NY2d, supra, at 70).
Considering both the form and the effect of the statute now before us, we conclude that chapter 390 violates fundamental Establishment Clause neutrality principles. Although chapter 390 sets forth facially neutral criteria, any attempt to characterize the statute as a religion-neutral law of general applicability is belied by its actual effect (Board of Educ. of Kiryas Joel Vil. School Dist. v Grumet, 512 US, supra, at 703). Presently, chapter 390 potentially benefits only the Village of Kiryas Joel and one other of the State’s 1,545 municipalities — the Town of Stony Point.[7] In practical effect, therefore, the religious community of Kiryas Joel is not “merely one in a series of communities” eligible for equal treatment under chapter 390’s special school district laws (512 US, supra, at *690 703-704; see also, Grumet v Cuomo, 90 NY2d 57, 73, supra).[8] That only two municipalities in all of New York State qualify under chapter 390 underscores the fact that groups finding themselves in a situation similar to that confronting the Satinar community will be unable to avail themselves of the statute’s benefits. Indeed, because the statute’s qualifying criteria are consciously drawn to benefit Kiryas Joel, other communities — both religious and secular — with similar educational needs will not have equal opportunity to create a publicly funded school district under chapter 390. Thus, the nonneutral effect of the statute is to secure for one religious community a unique and significant benefit — a “public school” where all the students adhere to the tenets of a particular religion — unavailable to other, similarly situated communities. In doing so, chapter 390 violates Establishment Clause principles by preferring one religion over others (512 US, supra, at 703).
Chapter 390 eliminated some of the fatal flaws of chapter 241 — its unconstitutional predecessor — but the effect of the two statutes is virtually identical. Although only one municipality — Kiryas Joel — qualified under the prior statute, it does not follow that chapter 390 — by allowing one additional municipality to qualify under the statute — is a general, religion-neutral law. Indeed, while it is true that chapter 390 eliminated the two qualification criteria of chapter 241 that were devoid of any legitimate purpose and plainly intended to limit eligibility under the statute to Kiryas Joel, the new statute fails to eradicate the earlier statute’s overriding flaw. The eligibility requirements under chapter 390 are still limited in such a way that permits the statute’s benefits to flow almost exclusively to the religious sect it was plainly designed to aid. Thus, like its *691 predecessor, chapter 390 is not a neutral law of general application.[9]
III.
In assessing the constitutionality of governmental action under the Establishment Clause, the Supreme Court of the United States has employed a number of tests, reflecting that not all cases are susceptible of review under a single standard (see, e.g., Lee v Weisman, 505 US 577, supra; County of Allegheny v American Civ. Liberties Union, 492 US 573; Larson v Valente, 456 US 228; Marsh v Chambers, 463 US 783).
The standard most often used is the tripartite test of Lemon v Kurtzman (403 US 602, supra), which requires that legislation have a secular purpose, that its principal effect neither advance nor inhibit religion, and that it not foster excessive entanglement between church and State. In recent years, the Supreme Court has questioned the Lemon test, but has not abandoned it. Indeed, in Agostini v Felton (521 US 203, supra), the Court observed:
“To be sure, the general principles we use to evaluate whether government aid violates the Establishment Clause have not changed since Aguilar was decided. For example, we continue to ask whether the government acted with the purpose of advancing or inhibiting religion, and the nature of that inquiry has remained largely unchanged. * * * Likewise, we continue to explore whether the [government action] has the ‘effect’ of advancing or inhibiting religion” (id., at 222-223).
Agostini thus makes clear that the second prong of the Lemon test (403 US, supra, at 612) — the requirement that a law’s “primary effect must be one that neither advances nor inhibits religion” — remains a consideration in assessing whether the Establishment Clause has been violated. Thus, the question in this case continues to be whether chapter 390 of the Laws of *692 1997 has the effect of advancing one religion over another. We conclude that it does.
Agostini, the most recent Supreme Court pronouncement on the application of Establishment Clause principles, presented a situation different from the one now before us. In Agostini the Supreme Court reviewed whether the placement of public school employees in parochial schools, under title I of the Elementary and Secondary Education Act for the purpose of providing remedial education to disadvantaged children, resulted in the impermissible effect of advancing religion. As such, the Court’s “effects inquiry” necessarily focused on whether the presence of public school teachers in parochial school classrooms results in religious indoctrination or the inculcation of religious messages, creating the impression of a “symbolic union” or an “excessive entanglement” between church and State (521 US, supra, at 222-223, 232-233).
The Court concluded that having public school teachers provide services to students in parochial schools does not have an impermissible effect because it does not result in governmental indoctrination, define its recipients by reference to religion or create excessive governmental entanglement with religion (521 US, supra, at 234). Under title I, a broad spectrum of disadvantaged children — from both secular and religious schools — would be provided the same benefits on a nondiscriminatory basis and as a result, the Court noted, such aid was less likely to have the effect of advancing religion (id., at 231; see also, id., at 210 [only 10% of the total number of students eligible for title I services are private school students attending sectarian schools; some 183,000 children nationwide received title I benefits]). The Court further noted that such a program could not be viewed as an endorsement of religion (id., at 235).
Unlike Agostini, the act under review here does not fall into one of the two usual types of Establishment Clause cases: chapter 390 neither provides public aid to a parochial school nor prescribes religious practices for a public school. Rather, it delegates to a religious group the governmental power to form its own public school district, which carries with it vast powers (see, Grumet v Board of Educ. of Kiryas Joel Vil. School Dist., 81 NY2d 518, 537, n 5, supra [Kaye, Ch. J., concurring]). Thus, even more directly pertinent to our analysis is Kiryas Joel I (512 US 687, supra), with facts and issues similar to those now before us. In Kiryas Joel I, the Supreme Court, implicitly relying upon Lemon’s second prong, concluded that the statute creating the Kiryas Joel School District was unconstitutional *693 because it provided a benefit to the Satmar community that was not provided equally to other groups (512 US, at 703-704, citing Larkin v Grendel's Den, 459 US 116). The Court concluded that by singling out Kiryas Joel for special treatment, as opposed to making the statutory benefits available to “many communities,” the statute violated the principle of neutrality to which all permissible religious accommodations must adhere (id.; see also, id., at 703 [because statute was so narrowly drawn, it provided “no assurance that the next similarly situated group seeking a school district of its own will receive one”]). The Court determined that the statute constituted an impermissible religious accommodation under the Establishment Clause and focused on the fact that the statute’s exclusive delegation of significant governmental power to a religious sect failed to ensure that similarly situated groups would also be able to avail themselves of that power (id., at 705-708).
This Court’s unanimous decision in Grumet v Cuomo (90 NY2d 57, supra), three years after the Supreme Court’s decision in Kiryas Joel I, also provides guidance. Analysis of whether chapter 241 was a “truly religion-neutral and generally applicable” law was based on the fundamental neutrality principles expressed by the Supreme Court’s many Establishment Clause cases, including Kiryas Joel I. This Court, noting that the Supreme Court had recognized as an important index of secular effect the “ ‘provision of benefits to [a] broad * * * spectrum of groups,’ ” found that the corollary to that proposition was also true — namely, that the “provision of a governmental benefit to a restricted class * * * formed along religious lines * * * is a telling index of nonneutral sectarian effect” (id., at 70, citing Widmar v Vincent, 454 US 263, supra; Board of Educ. of Westside Community Schools v Mergens, 496 US 226, 248, supra). Applying established neutrality requirements, the Court concluded that chapter 241 had the nonneutral effect of allowing only Kiryas Joel to reap the statute’s benefits, without providing the same opportunity to other groups.
As such, even though the statute was facially neutral and did not specifically name the Village of Kiryas Joel — as was the case in Kiryas Joel I — it still could not be considered a generally applicable, religion-neutral law (90 NY2d, supra, at 73 [statute did not provide benefits to Satmar community “ ‘simply as one of many communities eligible for equal treatment under a (truly) general law’ ”], citing Kiryas Joel 1, 512 US, at 703, supra). Furthermore, the Court determined that chapter 241 *694 failed the second prong of the Lemon test because its actual and perceived effect was solely to advance the interests of the Satmar community[10] (id., at 73-76). The Court also noted that “the Legislature might have achieved a constitutionally acceptable result had it enacted a truly religion-neutral law of general applicability that the Village of Kiryas Joel, as one in a broad array of eligible municipalities, might have invoked” (id., at 75).
In sum, while several standards have been employed by the Supreme Court to determine the constitutionality of a statute under the Establishment Clause, they all build upon the same foundation: fundamental neutrality principles. Indeed, to consider whether a statute has the impermissible effect of advancing religion or constitutes an impermissible religious accommodation is essentially to examine both sides of a coin. Under either inquiry, a statute so narrowly drawn that it delegates a significant governmental power almost exclusively to a single religious group, and provides no assurance that the statute’s benefits will be equally available to others, is unconstitutional.
IV.
Drawing on Supreme Court precedents, as well as our own case law, we conclude that, for many of the same reasons chapter 390 violates fundamental Establishment Clause neutrality principles, it has the primary effect of advancing one religion over others and constitutes an impermissible religious accommodation.
The events surrounding the enactment of chapter 390 offer strong support for the conclusion that chapter 390 has the effect of advancing the religious beliefs of the Satmars over oth *695 ers. The legislative history of chapter 390 reveals that it was enacted in direct response to Kiryas Joel II and with the intent to accomplish what previous legislative efforts had failed to accomplish: provide the residents of Kiryas Joel with an exclusively Satmar “public school” environment, at taxpayer expense, in which to educate their children. Indeed, the legislative debates reveal that the law was referred to as the “Kiryas Joel School Bill” and that chapter 390 was commonly referred to as “Kiryas Joel No. 3” (New York State Assembly, L 1997, ch 390, Legislative Debates, Aug. 4, 1997, at 88).
That chapter 390 was designed to accommodate the needs of the religious community of Kiryas Joel is not, however, what renders it unconstitutional. Indeed, a statute accommodating a religious group does not automatically create the impermissible effect of advancing religion (Kiryas Joel I, 512 US, supra, at 705-706; see also, Agostini v Felton, 521 US, supra, at 233). Supreme Court precedent makes clear that a statute accommodating religious needs by alleviating special burdens will not have the primary effect of advancing religion so long as the secular effect of the statute is sufficiently separable from its religious impact and the class benefitted by the statute is sufficiently broad (see, Grumet v Cuomo, 90 NY2d 57, supra; Committee for Pub. Educ. & Religious Liberty v Nyquist, 413 US 756, 768; Widmar v Vincent, 454 US 263, 274, supra; Walz v Tax Commn. of City of N. Y., 397 US 664, 673, supra; Mueller v Allen, 463 US 388, 397). In other words, a permissible accommodation must honor the principle of neutrality as among religions (Kiryas Joel I, 512 US, supra, at 706-707; id., at 705 [“there is ‘ample room under the Establishment Clause for “benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference” ’ ”]).
Applying the foregoing principles here, it is clear that chapter 390 does not constitute a permissible religious accommodation. The class benefitted under chapter 390 is anything but broad. Recognition of the fact that the statute benefits an extremely narrow class of municipalities is not a mere exercise in arithmetic or counting (see, dissenting opn, at 706). The Supreme Court has held that the provision of benefits to a “broad * * * spectrum of groups is an important index of secular effect”[11] (Widmar v Vincent, 454 US 263, 274, supra; see also, Kiryas
*696 Joel I, 512 US, supra, at 703 [because Kiryas Joel “did not receive its new governmental authority simply as one of many communities eligible for equal treatment under a general law,” neutrality could not be assured]; Board of Educ. of Westside Community Schools v Mergens, 496 US 226, 252, supra [statute did not have the primary effect of advancing religion where high school Christian club was merely one in a broad spectrum of clubs granted benefits thereunder]; Walz v Tax Commn. of City of N. Y., 397 US 664, 673, supra [property tax exemption for religious properties upheld where it applied to “broad class of property owned by nonprofit, quasi-public corporations,” not just religious groups or churches]; Bowen v Kendrick, 487 US 589, 608 [statute enlisting “wide spectrum of organizations” upheld]; Kiryas Joel II, 90 NY2d, supra, at 75 [a truly religion-neutral law of general applicability would apply to Kiryas Joel as “one in a broad array of eligible municipalities”]). Given chapter 390’s applicability to only two municipalities — one of which is a religious sect clearly intended to be the statute’s beneficiary — the secular effect of the statute is virtually indiscernible.[12]
Taking into account both the origin and operation of the statute, therefore, the conclusion is inescapable that chapter 390 has the primary effect of advancing religion and constitutes an impermissible accommodation (Kiryas Joel I, 512 US 687, 698, 706-707, supra; see also, Grumet v Board of Educ., 81 NY2d 518, supra; Grumet v Cuomo, 90 NY2d 57, supra).
V.
As we previously noted, chapter 748 was enacted in response to the situation in which Kiryas Joel was placed after Aguilar, and to address the conflict that ensued between MonroeWoodbury and Kiryas Joel (Grumet v Board of Educ., 81 NY2d, supra, at 525, citing Governor’s Approval Mem, 1989 NY Legis Ann, at 324). The subsequent legislation is an effort to address the same problems. Since Agostini, the Supreme Court has eliminated the obstacle posed by Aguilar to the education of the handicapped children in an exclusive Satmar setting. As *697 noted in the legislative debates by opponents of chapter 390: “This legislation is legislation * * * that is not necessary. If given the time and given the inclination to make the process work, students who are designed to be aided could be aided without this legislation” (New York State Assembly, L 1997, ch 390, Legislative Debates, Aug. 4, 1997, at 90). As such, the Appellate Division properly concluded that enacting chapter 390 would likely be perceived as a religious preference in light of the arguably constitutionally permissible alternative Agostini has provided.
Given the foregoing conclusions, we need not address the challenges posed under the State Constitution.
We conclude with an observation that we hope has not been lost on parties who have been locked in litigation for more than a decade. The genesis of all this legislation and litigation — the seeming insurmountability of Aguilar v Felton — no longer exists. It is now possible, compatibly with the Federal Constitution, to do what the parties wanted to do before Aguilar stopped them. Given this new opportunity, we strongly suggest that the parties make every effort to reach an accord that will benefit the children, and themselves. This is far preferable to the costly and inevitable prospect of further legal strife.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. Laws of 1989 (ch 748) provided:
“Section 1. The territory of the village of Kiryas Joel in the town of Monroe, Orange county, on the date when this act shall take effect, shall be and hereby is constituted a separate school district, and shall be known as the Kiryas Joel village school district and shall have and enjoy all the powers and duties of a union free school district under the provisions of the education law.
“§ 2. Such district shall be under the control of a board of education, which shall be composed of from five to nine members elected by the qualified voters of the village of Kiryas Joel, said members to serve for terms not exceeding five years.
“§ 3. This act shall take effect on the first day of July next succeeding the date on which it shall have become a law.”

. Education Law § 1504 (former [3]) (a), as added by L 1994, ch 241, stated: “(i) the enrollment of the municipality seeking to organize such new school district equals at least two thousand children, and is no greater than sixty percent of the enrollment of the existing school district from which such new school district will be organized; (ii) such new school district would have an actual valuation per total wealth pupil unit at least equal to the statewide average; (iii) the enrollment of the existing school district from which such new school district will be organized equals at least two thousand children, excluding the residents of such municipality; and (iv) the actual valuation per total wealth pupil unit of such existing school district will not increase or *686 decrease by more than ten percent following the organization of the new school district by such municipality.”

. Education Law § 1504 (3), as added by L 1997, ch 390, states in full: “3. Any municipality situated wholly within one central or union free school district but whose boundaries are not coterminous with the boundaries of such school district may organize, pursuant to the provisions of the subdivision, a new union free school district consisting of the entire *687 territory of such municipality whenever required by the educational interests of the community.
“a. No such new school district may be organized unless: (i) the enrollment of the municipality seeking to organize such new school district equals at least two thousand children, and is no greater than sixty percent of the enrollment of the existing school district from which such new school district will be organized; (ii) such new school district would have an actual valuation per total wealth pupil unit at least equal to the statewide average; and (iii) the enrollment of the existing school district from which such new school district will be organized equals at least two thousand children, excluding the residents of such municipality.”

. At the outset of the controversy the New York State School Boards Association, Shipley and Grumet were named plaintiffs. Although, technically, the Association was dismissed for lack of standing, the record continues to reflect plaintiffs’ counsel as the New York State School Boards Association.

. On this appeal, the American Jewish Congress submitted a brief amicus curiae arguing that chapter 390 is unconstitutional, and The Becket Fund for Religious Liberty argued that the statute is constitutional.

. While the dissent correctly notes that statutes are presumptively constitutional, that doctrine cannot insulate a statute that violates fundamental neutrality principles (see, e.g., Grumet v Cuomo, 90 NY2d 57, supra).

. The dissent cites a 1997 memorandum submitted by the Governor in support of the statute’s enactment, noting that 10 municipalities would be eligible to form school districts under chapter 390 (dissenting opn, at 706). Both lower courts, however, concluded from the record statistics that only two are eligible — Kiryas Joel and Stony Point. Appellants themselves do not assert that there are 10 eligible municipalities. Appellants themselves say only that the number of present and future municipalities that qualify under the statute “remains uncertain” and “may exceed” the two that have been identified. They identify no additional eligible municipalities. Defendants’ tenuous and speculative assertions that other municipalities will qualify under the statute’s criteria in the future raise only “theoretical possibilities” that lend no meaningful support to the contention that chapter 390 is a religion-neutral law of general applicability (Kiryas Joel II, 90 NY2d 57, 71, 73).

. We do not apply a “precedentially unsupportable” “broad spectrum theory” here (dissenting opn, at 703). (See, Widmar v Vincent, 454 US 263, 274; Board of Educ. of Westside Community Schools v Mergens, 496 US 226, 252; Walz v Tax Commn. of City of N. Y., 397 US 664, 673; Bowen v Kendrick, 487 US 589, 608; Kiryas Joel II, 90 NY2d;supra, at 70, 75.) Moreover, Agostini does not support the proposition that, in determining secular effect, courts need not consider whether a challenged State action benefits a broad spectrum of groups (dissenting opn, at 705; see, Agostini v Felton, 521 US, at 231, supra [citing Widmar v Vincent, 454 US, at 274, for the proposition that the “provision of benefits to so broad a spectrum of groups is an important index of secular effect”]).

. This Court, in Grumet v Cuomo (90 NY2d 57, supra), did not suggest the outlines of chapter 390 (see, dissenting opn, at 700-701). The Court identified two eligibility criteria in chapter 241 that were devoid of any legitimate purpose, but never suggested that mere deletion of those defective provisions would render the statute constitutional. To the contrary, the Court observed that “the Legislature might have achieved a constitutionally acceptable result had it enacted a truly religion-neutral law of general applicability that the Village of Kiryas Joel, as one in a broad array of eligible municipalities, might have invoked” (id., at 75). That was not done.

. While the status of the endorsement test employed by this Court in Grumet v Cuomo is uncertain, consideration of a statute’s actual effect — the central focus of our analysis here — remains a valid inquiry in determining whether a law has the primary effect of impermissibly advancing religion (see, Agostini v Felton, 521 US, at 222-223, supra; see also, id., at 235 [the same considerations that led the Court to conclude that title I did not have the effect of advancing religion also required the Supreme Court “to conclude that (the program) * * * cannot reasonably be viewed as an endorsement of religion”]; McCarthy, The Road to Agostini and Beyond, 124 Ed Law Rep 771 [Agostini can be read as “providing modest support” for the endorsement standard championed by Justice O’Connor in reviewing Establishment Clause claims]; but see, dissenting opn, at 704, 705 [questioning viability of endorsement test in the wake oí Agostini]). In any event, we do not employ an endorsement analysis in this case.

. Contrary to the dissent’s reading of the majority opinion as holding that statutes that do not apply to a sufficiently broad spectrum of religious groups will automatically be considered unconstitutional, there is nothing in *696 our analysis that stands for that proposition (dissenting opn, at 704 [citing majority opn, at 695]).

. Any analogy between chapter 390 and Village Law § 2-200, under which Kiryas Joel incorporated, is misplaced (dissenting opn, at 703). Indeed, the Village Law provides a good example of a religion-neutral, generally applicable law that applies to a broad spectrum of beneficiaries, and a good contrast to chapter 390.